## MEYERS v. WALTER.

Court of Appeals of Kentucky.

Dec. 19, 1952.

Gilbert Burnett, City Atty., and Alex P. Humphrey, Asst. City Atty., Louisville, for appellant.

Henry E. McElwain, Jr., Louisville, for appellee.

DUNCAN, Justice.

This agreed question presented under Section 637 of the Civil Code of Practice concerns the right of appellee, Charles A. Walter, to compensation from the City of Louisville for his services in presiding over what is referred to as the Night Branch of the Louisville Police Court.

The controversy requires the construction of KRS 26.220, which is Chapter 166, Acts of 1950, and provides as follows:

"The judge of police court of a city of the first class may appoint two trial commissioners, and may designate one of them to serve as pro tem judge. They shall hear cases in rooms provided by the city legislative body for police court and as trial commissioners may sit simultaneously with the elected judge. The pro tem judge shall have the same rights, powers and duties as the elected judge whenever the elected judge fails to attend and hold court, or vacates the bench. The trial commissioners and pro tem judge shall have the same qualifications as the elected judge, shall hold office at the pleasure of the elected judge and shall not practice any case in police court. The compensation of the trial commissioners and pro tem judge for services rendered shall be fixed by ordinance not to exceed the rate of salary of the elected judge and be paid by the city at the same time as the salary of other city officers."

The police judge of the city, in order to facilitate handling of the enormous volume of cases falling within the jurisdiction of the police court, divided the work of the court into separate branches as follows:

(a) Police Court proper—presided over by the police judge and handling all cases within the general jurisdiction of the court except those assigned or transferred to other branches.

(b) Traffic Branch—handling all cases involving traffic violations.

(c) Domestic Relations Branch—handling all cases involving problems of domestic relations.

(d) Night Court—for the prompt handling of all cases arising at hours when the regular court is not in session.

Prior to July 1, 1952, the judge of the police court had construed KRS 26.220 as authorizing him to appoint two trial commissioners and a judge pro tem. However, upon submission of that question to the Jefferson Circuit Court, in an action which was never appealed, that court ruled to the contrary, and it was determined that the judge pro tem must be one of the two trial commissioners.

Accordingly, after July 1, 1952, the police judge was faced with the administrative problem of providing a staff for the police court proper and its three branches without exceeding the number of trial commissioners authorized by KRS 26.220, as interpreted by the former action. To meet the situation, he adopted the following plan:

(a) Michael M. Hellman was appointed as one of the trial commissioners and assigned to the duty of hearing all cases involving traffic violations.

(b) At or about noon on Monday, Wednesday and Friday of each week, Hugo Taustine was appointed trial commissioner and judge pro tem and assigned to the duty of hearing all cases involving problems of domestic relations on the afternoons of those three days.

(c) At or about 5:30 p. m. on every Monday, Wednesday and Friday, the appointment of Taustine as trial commissioner and judge pro tem was terminated and the appellee, Charles A. Walter, was thereupon appointed as trial commissioner and judge pro tem, thus enabling him to hold night

court sessions of the police court on every night and to act as the second trial commissioner at all periods of time except the three afternoons each week when Taustine was so acting. The appointments of appellee were likewise terminated by appropriate orders prior to the sitting of Taustine in the Domestic Relations Branch.

By this arrangement, no more than two trial commissioners were serving concurrently although within the period of one day, on Mondays, Wednesdays and Fridays, three commissioners actually served, at different intervals.

Appellant, as director of finance, questioned the validity of the various designations of appellee, Charles A. Walter, as trial commissioner and judge pro tem and refused to pay appellee his per diem for the several days upon which he has served under these appointments.

Notwithstanding the contrary interpretation of the Jefferson Circuit Court in the earlier action, it is insisted here that a proper construction of KRS 26.220 authorizes the appointment of a judge pro tem and two trial commissioners.

In construing the statute, a brief review of prior statutes relating to the Louisville Police Court may be helpful. Section 160 of the Constitution provides for the election of "police judges". Although referred to in the plural, the constitutional provision has been taken to mean a single elected judge for each city. The elected judge is spoken of in the singular in all cities by Chapter 26 of the Kentucky Revised Statutes, and more particularly in cities of the first class, KRS 26.130, where it is provided:

"The officers of the police court in cities of the first class shall be a judge, a prosecuting attorney and a clerk."

Early statutory provision was made for a judge pro tem in cities of the first class. Section 2925, Carroll's Kentucky Statutes, Baldwin's 1936 Revision, provided for the selection of a judge pro tem who should act only in the event of the absence or disqualification of the regular judge. Notwithstanding the statutory provision limiting the period of service for a judge pro tem, that officer developed into a constant member of the Louisville Police Court, sitting in daily attendance concurrently with the regular judge.

This Court, in Hargadon v. Silk, 279 Ky. 69, 129 S.W.2d 1039, declared void a city ordinance providing a regular salary for the judge pro tem. It was there held that there could be no "duplicate" judge acting concurrently with the regular judge. At the next session of the Legislature, an Act was passed authorizing the city to provide a regular salary for the pro tem judge. Acts 1940, Chapter 116. In 1948, the General Assembly changed the appointing power from the mayor to the elected judge. KRS 26.220, 1948 Ed.

Notwithstanding the Hargadon case, the practice of a "duplicate" judge sitting concurrently with the regular judge continued for ten years after that decision. The 1950 Act designated the assistants as "trial commissioners" and specifically authorized them to sit concurrently with the regular judge.

Appellee insists that the last two sentences in the 1950 Act, referring to "the trial commissioners and pro tem judge" evidently mean two trial commissioners in addition to the judge pro tem because reference to the commissioners is in the plural. Upon this premise, it is argued that the elected judge has the authority to designate three assistants, providing the judge pro tem is not one of the two trial commissioners.

■ We do not so construe the statute. We think the conjunctive "and" following the reference to "trial commissioners" in the plural relates to the offices which may be filled rather than to the number of persons who may fill them. The statute provides for the filling of three offices, viz.: two trial commissioners and a judge pro tem. However, it clearly limits to two the number of persons who may fill the offices. If a judge pro tem is designated, such designation must be restricted to one of the trial commissioners appointed under authority of the statute. This construction is further supported by the title of the Act which provides:

"An Act providing for trial commissioners, one of whom may serve as Judge Pro Tem, in Police Court of Cities of the first class, setting forth powers, duties and compensation."

This leaves the sole question as to whether the alternating and periodical appointments of appellee are valid so as to entitle him to the per diem allowance authorized by the city legislative body for that specific purpose. The trial commissioners are not term officers, and under the specific provision of the statute, they hold office only at the pleasure of the elected judge. The judge at any time may discharge a commissioner with or without cause and appoint another to fill the vacancy thus created.

Frankness compels us to observe that the practice of staggering appointments may under some circumstances amount to an evasion of the statute. On the other hand, the good faith of the parties and the urgent necessity for such an arrangement are conceded here. Neither possibility of evasion, good faith, or the exigencies of the situation properly enters into the statutory construction. These are strictly matters for legislative consideration. The rule is stated in 50 Am.Jur. p. 366, sec. 361, Statutes as follows:

"However, the fact that a statute may be easily evaded furnishes no excuse for supplying by judicial construction that which is palpably omitted therefrom."

Under the provisions of the Act, a trial commissioner conceivably may serve four years, or his tenure may be only a matter of hours. If the elected judge may terminate the appointment of a commissioner within a year of his selection, he may do so within an hour. To place a limitation upon the frequency that terminations and new appointments may be made would add provisions to the statute which do not appear. Nor can we say that in making appointments to fill vacancies, properly created, the judge is restricted in his selection of appointees to the extent that he cannot appoint those previously discharged.

So long as the combined compensation of the two alernating trial commissioners does not exceed the constitutional limitation for the one office, we perceive no reason why two separate individuals could not fill the same office, providing they are not doing so simultaneously. We, therefore, conclude that the alternating appointments of appellee were valid and that he is entitled to the per diem allowance for his services under such appointments.

The judgment is affirmed.