**GATEWAY CONSTRUCTION COMPANY,**
Appellant,

v.

Edward WALLBAUM et al., Appellees.

Court of Appeals of Kentucky.

Feb. 9, 1962.

As Modified on Denial of Rehearing
May 4, 1962.

William Mellor, Louisville, for appellant.

Wilton R. Long, Jr., Louisville, for appellees.

MONTGOMERY, Judge.

Gateway Construction Company appeals from a judgment sustaining an award of the Workmen's Compensation Board in favor of Edward Wallbaum. Gateway had a contract to alter and repair a dwelling in Louisville. It had a subcontract with John G. Straub to do the roofing work. On June 6, 1960, while working for Straub on the job, Wallbaum fell from a ladder and was injured.

The latter sought to recover benefits under the Act against Gateway. It is asserted in Wallbaum's brief that the proceeding was instituted jointly against Gateway and Straub, but this is not shown by the record.

Gateway had accepted the provisions of the Workmen's Compensation Act. Straub had two employees, one of whom was Wallbaum. Under KRS 342.005(2), in effect on the date of the injury, the only way an employer having less than three employees and his employees could have come under the Act was by joint voluntary application in writing to the Board. No such application had been made by Straub and Wallbaum.

■ Further, the employer-employee relationship between Straub and Wallbaum arose from a contract for hire. There is no such contract or relationship shown between Wallbaum and Gateway. KRS 342.-395 provides that the election of the employer to operate under the Act carries with it "as a part of his contract of hiring" a corresponding acceptance by the employee. The absence of any contract for hire between Wallbaum and Gateway closes that avenue of relief under KRS 342.395. The claimant has the burden of showing coverage under the Act. Collier v. Wright, Ky., 340 S.W.2d 597.

Wallbaum, therefore, insists that he is a so-called "statutory employee" of Gateway, the principal contractor, under KRS 342.-060, referred to as a "contractor-under" statute. The sole question presented is

whether an injured employee of a subcontractor can recover workmen's compensation under KRS 342.060 against the principal contractor where the principal contractor had elected to be covered by the Workmen's Compensation Act but where neither the subcontractor nor his injured employee had so elected.

The effect of KRS 342.060 of the Act is involved. KRS 342.060 follows:

"A principal contractor, intermediate or subcontractor shall be liable for compensation to any employe injured while in the employ of any one of his intermediate or subcontractors and engaged upon the subject matter of the contract, to the same extent as the immediate employer. Any principal, intermediate or subcontractor who pays such compensation may recover the amount paid from any subordinate contractor through whom he has been rendered liable under this section. Every claim to compensation under this section shall in the first instance be presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employe's rights to recover compensation under this chapter from the principal or intermediate contractor. The collection of full compensation from one employer shall bar recovery by the employe against any other. But he shall not collect from all a total compensation in excess of the amount for which his immediate employer is liable. This section shall apply only in cases where the injury occurred on, in or about the premises on which the principal contractor has undertaken to execute work or which are under his control otherwise or management."

■ The question presented is one of law on which the employee is entitled to a liberal construction. KRS 342.004; Dick v. International Harvester Company, Ky., 310 S.W.2d 514. However, it is neither the

duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there. Arduini v. General Ice Cream Company, 123 Conn. 43, 192 A. 314, 114 A.L.R. 1333; Doherty's Case, 294 Mass. 363, 2 N.E.2d 186, 105 A.L.R. 576. The humane spirit of the statute does not warrant its extension beyond its legitimate scope. 58 Am.Jur., Workmen's Compensation, Section 27, page 597.

Statutory law has been held to be an expression of the intention of the Legislature. To interpret a statute, the common rule is to ascertain and determine the legislative intent. Hopkins v. Dickens, 188 Ky. 368, 222 S.W. 101. It should be pointed out, however, that legislative intent is at best a nebulous will-o'-the-wisp. Far better it is to be guided by the old adage, "Plain words are easiest understood."

The best way in most cases to ascertain such intent or to determine the meaning of a statute is to look to the language used, but no intention must be read into the statute not justified by the language. Bohannon v. City of Louisville, 193 Ky. 276, 235 S.W. 750. The primary rule is to ascertain the intention from the words employed in enacting the statute and not to guess what the Legislature may have intended but did not express. Lewis v. Creasey Corporation, 198 Ky. 409, 248 S.W. 1046. Resort must be had first to the words, which are decisive if they are clear. City of Covington v. Cincinnati C. & R. R. Co., 144 Ky. 646, 139 S.W. 854; Goodpaster v. United States Mortgage Bond Co., 174 Ky. 284, 192 S.W. 35; Western Kentucky Coal Company v. Nall & Bailey, 228 Ky. 76, 14 S.W.2d 400; City of Covington v. Sohio Petroleum Company, Ky., 279 S.W.2d 746. The words of the statute are to be given their usual, ordinary, and everyday meaning. Louisville Country Club, Inc. v. Gray, D.C., 178 F.Supp. 915; Thompson v. Bracken County, Ky., 294 S.W.2d 943.

The language of KRS 342.060 contains usual, ordinary, everyday words. It is plain and free of ambiguity. The entire statute indicates that a liability against the principal contractor and in favor of the subcontractor's employee is created which is dependent on the determination of the amount of the claim awarded in a proceeding against the immediate employer. This proceeding is a condition precedent to liability on the part of the principal contractor.

The language of the statute expressly provides that "Every claim * * * shall in the first instance be presented to and instituted against the immediate employer * * *." The liability of the principal contractor is limited "to the same extent as the immediate employer." The liability of the latter must be determined first. The total compensation that may be recovered by the employee is further limited to the amount of compensation for which the immediate employer has been held liable. A right of recovery is given the principal contractor against the immediate contractor in case the latter has failed to satisfy the award. All of the language used in the statute, when given its usual meaning, indicates a legislative intent to require a proceeding against the immediate contractor first and that no award is authorized against the principal contractor until and after the proceeding against the immediate contractor. Inasmuch as Wallbaum has never proceeded against Straub, his immediate employer, (in fact he could not do so validly) and has proceeded directly against Gateway, the principal contractor, he has done so erroneously. See Industrial Commission v. Everett, 180 Ohio St. 369, 140 N.E. 767; Keeling v. Schuman Brothers Lumber Company, 204 Okl. 277, 229 P. 2d 193; Doherty's Case, 294 Mass. 363, 2 N.E.2d 186, 105 A.L.R. 576.

Wallbaum relies on Maxwell v. Beck, 169 Tenn. 315, 87 S.W.2d 564, wherein it was assumed that the employee of the subcontractor had elected to accept the Workmen's Compensation Act. The language of the Tennessee Act is dissimilar and the construction given it is questionable. Gra-

ham v. Wall, 220 N.C. 84, 16 S.E.2d 691, cited as following the Tennessee case, was decided on a question of whether there was sufficient evidence to sustain the Board's finding of fact. The latter portion of the opinion devoted to the "contractor-under" statute may be considered as dictum and not binding since a majority of that court did not agree with it. The reliance of Wallbaum on DeLonjay v. Hartford Accident & Indemnity Company, 225 Mo.App. 35, 35 S.W.2d 911, and Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, is not justified since the Missouri statute deals with primary and secondary liability in a manner not embraced in KRS 342.060.

Accordingly, it is felt that a liberal construction of the statute does not justify a construction in derogation of its plain language. Western & Southern Life Insurance Company v. Weber, 183 Ky. 32, 209 S.W. 716; Clark v. Riehl, 313 Ky. 142, 230 S.W.2d 626; Meyers v. Walter, Ky., 253 S.W.2d 595; Bedinger v. Graybill's Ex'r and Trustee, Ky., 302 S.W.2d 594.

Judgment reversed.

STEWART, C. J., and MILLIKEN, J., dissent.

MILLIKEN, Judge (dissenting).

My difference with the majority opinion is a basic attitude toward statutory construction. Instead of worrying about whether we as a court were dotting some of the "i's" and crossing some of the "t's" left undotted and uncrossed by the Legislature, I would ask the purpose of the legislation —what did the Legislature want to do, and would then pursue a course calculated to effectuate what I thought the Legislature sought to accomplish. Such an approach is especially practicable in the field of social legislation such as the Workmen's Compensation law and in the field of public administration generally, for inability to foresee all of the ramifications of the various fields affected is the very reason for the creation of boards of specialists by the Legislature.

The obvious purpose of the section of the Workmen's Compensation Act involved here is to protect the employees of subcontractors, who are not financially responsible, when they work on a project supervised by a general contractor who has his own employees protected by Workmen's Compensation and, corelatively, to prevent general contractors from relieving themselves of liability for compensation by doing through uncovered subcontractors what the general contractor would otherwise do directly through his own protected employees. The section declares "[it] shall apply only in cases where the injury occurred on, in or about the premises on which the principal contractor has undertaken to execute work or which are under his control otherwise or management," thus impliedly reflecting the legislative intent to protect all of the workmen on such a job if the general contractor was protected by his acceptance of the Act from ordinary common law liability. Unless that is the overall purpose of the legislation, it has little reason to be in the Workmen's Compensation law. We are not the only state with analogous statutes to contend with.

Statutory provisions with the same purpose as the one here involved may be found in the Workmen's Compensation laws of most of the states. According to Larson, Workmen's Compensation Law, Sec. 49.11:

"Thirty-nine states have adopted 'contractor-under' statutes, imposing on the general employer compensation liability (sometimes joint, sometimes primary, but usually secondary) to the employees of contractors (in most instances uninsured contractors) under him. It has become quite common to speak of the liability so created as that of the 'statutory employer' to a 'statutory employee.' This terminology is the most convenient yet devised for this new concept, and will be used

here, with the caution that it is inaccurate and misleading in those states which regard the general employer merely as a sort of guarantor or insurer, having none of the immunities, such as immunity from common-law suit, that go with employer status.

"The purpose of this legislation was to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers. The statute also aims to forestall evasion of the act by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers and relegating them for compensation protection to small contractors who fail to carry (and, if small enough, may not even be required to carry) compensation insurance."

Could there be any better example of the need for legislation with this purpose than the case at bar?

The general contractor here contends that it cannot be liable until a claim "shall in the first instance be presented to and instituted against the immediate contractor" which procedure would, of couse, be futile in the present case because the immediate contractor was not covered by the Act. The general contractor contends that any liability it may have is secondary, not primary. In DeLonjay v. Hartford Accident & Indemnity Company, 225 Mo.App. 35, 35 S.W. 2d 911, the Court said:

"* * * The cause does not say that the immediate employer must be liable to the employee under the act in order to make the principal contractor liable to the employee. * * * If the principal contractor does not have recourse (against the immediate contractor) in

every case, it is because of a situation which the contractor itself has created by subcontracting with a minor employer who does not accept, and is therefore not subject to the provisions of the Act. Of this the contractor has no right to complain. The most that can be said of the clause in question is that it introduces ambiguity, and under the rule of liberal construction, this must be resolved in favor of the right of the employee to compensation. Surely, it does not justify interpolating into the act language which the Legislature did not see fit to put in it."

And in Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769, in approving the DeLonjay case, the Missouri Supreme Court said:

"Even if they (the principal contractor) cannot recover over against a minor employer not subject to the act, yet it must be kept in mind that the act is purely elective as to all major employers * * * and such major employers may protect themselves by requiring the subcontractors, whether major or minor employers, to insure their employees."

The Missouri opinions above adhere to the intention of such legislation. Regardless of any difference in wording between their comparable statute and ours, the very questions raised in the case at bar were raised there and disposed of on the basis of reasoning—of looking to the intention of the statute, and, consequently, concluding to protect the injured worker—the principal overall purpose of Workmen's Compensation legislation. In 1935 Tennessee reached the same conclusion under a greatly similar statute, Maxwell v. Beck, 169 Tenn. 315, 87 S.W.2d 564; and North Carolina in Graham v. Wall, 220 N.C. 84, 16 S.E.2d 691. See, also, annotation in 105 A.L.R. 581 et seq.

For the reasons stated I dissent from the majority view, and would also allow recovery.

STEWART, C. J., concurs in this dissent.