**Phillip GRAHAM, Appellant,**

v.

**Angel ROGERS; Brandon Loudon; and State Farm Mutual Automobile Insurance Company, Appellees.**

**No. 2007–CA–000963–MR.**

Court of Appeals of Kentucky.

April 25, 2008.

Discretionary Review Denied by Supreme Court March 11, 2009.

11. 83 S.W.3d at 481 (emphasis added).

12. 12 S.W.3d at 272.

13. *Id.* at 273.

14. 83 S.W.3d at 477.

15. 12 S.W.3d at 273.

252

Bradley D. Harville Dana Taylor Skaggs
Louisville, KY, for appellant.

Curt L. Sitlinger John E. Hamlet Sitlinger, McGlincy, Theiler & Karem Louisville, KY, for Appellee.

1. Senior Judge David C. Buckingham, sitting
 as Special Judge by Assignment of the Chief
 Justice pursuant to Section 110(5)(b) of the

Before: LAMBERT and MOORE,
Judges, BUCKINGHAM,[1] Senior Judge.

*OPINION*

LAMBERT, Judge:

Phillip Graham appeals from summary judgment entered in favor of Brandon Loudon and State Farm Mutual Automobile Insurance Company (hereinafter "State Farm"), finding that ownership of Loudon's 1989 Chevrolet Caprice had transferred to Angel Rogers. After careful review, we affirm.

On August 8, 2005, Loudon sold his 1989 Chevrolet Caprice to Rogers for $400.00. Loudon signed the back of the Caprice's title in the "Transfer of Title by Owner" section and the "Application of Title/Affidavit of Total Consideration" section. Both of these signatures were witnessed and attested to by a notary in the Jefferson County Clerk's Office. Loudon then delivered the signed and notarized title to Rogers. Unknown to Loudon was the fact that Rogers did not promptly apply for a new title and also did not have insurance.

The Caprice was involved in an accident with Graham's 1999 Chevrolet Tahoe in the early morning hours of September 25, 2005, approximately seven weeks after the original sale. That evening, Rogers phoned Loudon to inquire about obtaining a new title to the Caprice as she had lost the one he had provided for her, but Rogers said nothing of the accident. On October 7, 2005, having been unable to locate Rogers, Loudon contacted the Jefferson County Clerk's Office to determine if she had yet applied for a new title. When he discovered that she had not, he requested that the Clerk's office note the transfer of

Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

ownership which occurred on August 8, 2005. The Clerk's office noted it in its computer system "SOLD TO ANGEL ROGER [sic]." With the assistance of the Louisville–Jefferson County Metro Police, Loudon located Rogers on October 11, 2005, and obtained her signature on a bill of sale reflecting the sale on August 8, 2005.

Graham brought suit against Rogers for negligent operation of a vehicle and against Loudon for negligent entrustment of the vehicle to Rogers. Graham also sued State Farm for liability coverage under its automobile insurance policy with Loudon and for bad faith in denying coverage on the claim. After written discovery and depositions, all parties filed motions for summary judgment. The trial court concluded that Loudon had taken all steps necessary under Kentucky statutes to transfer ownership of the vehicle to Rogers, therefore finding that Rogers was legal owner of the Caprice at the time of the accident and dismissing all claims against Loudon and State Farm. This appeal followed.

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. We are mindful that "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky.1991).

■ Graham argues that the trial court incorrectly relied on *Nantz v. Lexington Lincoln Mercury Subaru*, 947 S.W.2d 36, 37 (Ky.1997), in which the Kentucky Supreme Court held that "according to KRS 186A.215, a transfer of title takes place when the seller completes and signs the assignment of title section of the title certificate and delivers it to the buyer." More to the point, he contends that the specific proof of insurance requirements in vehicle transfers did not take effect until after the transaction in *Nantz*, and they contain a carve-out exception for car dealers but not for individual sellers. We disagree.

KRS 186.190, as amended in 1998, establishes requirements for the *transfer of registration upon transfer of ownership*. This statute clearly deals with the change in registration and issuance of new title *after* transfer in ownership takes place. As Graham concedes, the issue here is who owns the vehicle not who the vehicle is registered to, as both parties agree the car is still registered to Loudon. Therefore, KRS 186.190 is not relevant to the issues in this case.

Graham additionally cites KRS 186.232(2) in support of his argument that Loudon had a duty to confirm Angel had insurance. KRS 186.232(2) establishes that it is the obligation of the buyer to present proof of insurance to the clerk before new title will be issued, but it establishes no affirmative duty on an individual seller to verify said insurance. Therefore, it is also not applicable to the issues in this case.

According to KRS 186A.215, transfer of title to a motor vehicle takes place when the seller completes the certificate of title form, and provides it to the buyer. *Nantz*, at 37. We agree with Loudon and State Farm that despite the fact that the seller in *Nantz* was a dealer, *Nantz* applies to both individual sellers and dealers as it relates to the first three requirements of KRS 186A.215. Therefore, an individual seller and buyer must sign the title docu-

ment (KRS 186A.215(1)), complete the certificate of title form (KRS 186A.215(2)), and promptly file the documents with the county clerk. KRS 186A.215(3). *Nantz* did not, however, address KRS 186A.215(4) because it is explicitly inapplicable to dealers. We, on the other hand, must address KRS 186A.215(4) since Loudon is an individual seller bound by the statute.

KRS 186A.215(4) provides:

*If it comes to the attention of a transferor that a transferee did not promptly submit the necessary document within fifteen (15) calendar days to the county clerk as required by law in order to complete the transfer transaction, a transferor shall submit to the county clerk, in his county of residence, an affidavit that he has transferred his interest in a specific vehicle, and the clerk shall enter appropriate data into the AVIS system which shall restrict any registration transaction from occurring on that vehicle until the transfer has been processed. The Transportation Cabinet may adopt administrative regulations governing this subsection. This subsection shall not apply to any transactions involving licensed Kentucky motor vehicle dealers.*

(Emphasis added.) "As with any case involving statutory interpretation, our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *See Beckham v. Board of Educ. of Jefferson County*, 873 S.W.2d 575, 577 (Ky.1994)(citing *Gateway Construction Co. v. Wallbaum*, 356 S.W.2d 247 (Ky. 1962)). With these principles in mind, we will address the issue of whether Loudon's not notifying the clerk of Rogers' failure to promptly file the necessary documents to transfer title reverted ownership back to him after fifteen days passed from the time the car was sold.

 The plain language of the statute says "*[i]f it comes to the attention* of a [seller] that a [buyer] did not promptly submit the necessary document within fifteen (15) calendar days...." KRS 186A.215(4). The operative word is "if." The legislature did not say it is incumbent upon the seller to verify that the buyer had submitted the necessary documents to the clerk's office within fifteen days of sale, instead it said, "if it comes to the attention of the [seller]...." As the concurring opinion in *Nantz* stated:

[t]he duty of properly registering the title of a motor vehicle is the obligation of the purchaser when the seller has provided all documents required by the transferring statute, KRS 186A.215. The responsible seller who complies with every requirement of the transferring statute should not be placed at the mercy of the irresponsible buyer who fails to comply with the statute.

. . .

While it would achieve a good and wholesome result to provide insurance coverage for injured innocent third parties when an automobile purchaser has failed to procure insurance, providing this coverage at the expense of the seller merely because the buyer has not obeyed the law would reward irresponsibility. It is the prerogative of the legislature to write a statute achieving [this] result....

*Nantz*, at 39–40. The legislature has not chosen, in the decade since the *Nantz* decision, to establish an affirmative duty on the seller to insure the buyer's compliance with KRS 186A.215(3). Thus, we will not, in an operation of judicial activism, create a duty that does not statutorily exist. Thus, in light of the holding in *Nantz* and

the fact that Loudon undisputedly did not have knowledge of Rogers' failure to file for new title until after the accident, we find that Rogers was the owner of the Caprice at the time of the accident.

Accordingly, we affirm the entry of summary judgment in favor of Loudon and State Farm.

ALL CONCUR.